UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF New York

Case No. 12-48522


-------------------------------------------------------X

IN THE MATTER OF:

89 Ralph Avenue Realty Corporation          Chapter 7




-------------------------------------------------------X

                              U.S. Bankruptcy Court

                              271 Cadman Plaza

                              Brooklyn, New York 11201

                              February 21, 2013

                              2:56 PM

BEFORE:

HON CARLA E. CRAIG

U.S. BANKRUPTCY JUDGE




**AAA Write It Right Transcription**
500 Silver Lane   Oceanside, NY 11572-1941
Phone: (516) 764 3906   Fax: (516) 203-4244

1    Hearing re:

2              Motion to Authorize/Direct Henrietta Miller as

3         an individual required to act in this case

4              Motion to Dismiss Case against Debtor

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1    A P P E A R A N C E S:
2    FELTON & ASSOCIATES
3         Attorney for the Debtor
4         1371 Fulton Street
5         Brooklyn, New York 11216
6
7    BY:   REGINA FELTON, ESQ.
8
9
10   WEISS AND ZARETT, P.C.
11        Attorney For 1st Bridge, LLC
12        3333 New Hyde Park Road
13        New Hyde Park, New York 11042
14   BY:   MICHAEL D. BROFMAN, ESQ.,
15
16
17   LAMONICA HERBST & MANISCALCO LLP
18        3305 Jerusalem Avenue
19        Wantagh, New York 11793
20   BY:   ADAM P. WOFSE, ESQ.,
21
22
23
```

PROCEEDINGS

1 THE CLERK:   Nineteen and twenty, 89 Ralph Avenue.

2 Appearances please?

3

4 MS. FELTON:   Regina Felton, 1371 Fulton Street,

5 for the debtor, 89 Ralph Avenue Realty Corp.

6 MR. BROFMAN:   Good afternoon, Your Honor.  Michael

7 Brofman, Weiss & Zarett, P.C., for the petition and

8 creditor, 1st Bridge.

9 MR. WOFSE:   Good afternoon, Your Honor.  Adam

10 Wolse, Lamonica Herbst Maniscalco, representing Gregory

11 Messer, the Chapter 7 Trustee.

12 THE COURT:   Okay, I'll let you go first Ms.

13 Felton, since you represent the moving party.

14 MS. FELTON:   Right.  I made the motion for a

15 judgment of dismissal, based on the fact that the

16 corporation was not served.

17 Now, I was able to determine from the Secretary of

18 State, that the summons and the involuntary petition were

19 never delivered to the Secretary of State.  That the

20 statutory fee was never paid.

21 As a matter of fact, as I was leaving to come here

22 I received a notice from Albany indicating that they e-

23 mailed something called a Certificate of No Service, which

24 is certified, indicating that there was no service made on

25 the Secretary of State.

1          THE COURT:   But that still leaves an open question

2     about whether the -- whether there was service by mail.

3          MS. FELTON:   All right.  Now, as I point out --

4          THE COURT:   Even if you have that proof.

5          MS. FELTON:   Yes.  As I point out in my reply

6     affirmation, there is nothing in the affidavit of service

7     by the legal assistant to Mr. Brofman.  That the

8     documentation was delivered to the post office, what the

9     affidavit of service actually says is that the legal

10    assistant packaged it to be delivered, presumably to the --

11    presumably to the postal service.  Now what it exactly says

12    is that by causing a true copy of the same to be enclosed

13    in postage-paid wrapper, to be delivered in an official

14    depository.

15         THE COURT:   Okay.  All right, Ms. Felton, I think

16    we have an issue of fact here, at a minimum.  So this is

17    not something that's going to be decided on affidavits, if

18    that comes down to it.  We have to have testimony here.

19         But here's my take on this, which is that you think

20    -- what you're requesting is dismissal, but dismissal would

21    not be the result.  It would be perhaps vacating the order

22    for relief, but that does not result in the dismissal of

23    the case.  And in fact the plaintiff is free to obtain a

24    supplemental summons at any point in time up to one hundred

25    and twenty days after the -- and to serve it -- at any

1  point in time up to one hundred and twenty days after the

2  complaint is filed.

3         In Federal Court the commencement of the case

4  occurs when the case is filed.  So, unlike State Court

5  where if the service hasn't occurred, the case hasn't been

6  properly commenced, which is not the case in Federal Court.

7  So, we would not -- I would not, under any circumstances be

8  dismissing this case, even if I determined that it wasn't

9  properly served.

10        So, what we can do, it seems to me, is set up a

11  hearing date for this, for this motion, which I'll treat as

12  a motion to vacate the order for relief.

13        MS. FELTON:   All right.

14        THE COURT:   I'm sorry.  Did you want to say

15  something else?

16        MS. FELTON:   Yes, I do.  I don't know whether or

17  not you read the papers, or if you're familiar with the

18  fact that this case is pending in State Court.

19        THE COURT:   Well there's a foreclosure action is

20  pending in State Court.

21        MS. FELTON:   The action and there is an action for

22  dismissal by virtue of an action for summary -- there is a

23  motion for summary judgment, by virtue of the fact that the

24  petitioner was not licensed to do business in the state.

25  And under New York State law, if you are doing a continuous

1   and systematic business, without having been authorized,

2   pursuant to either 808 or 1312, of the Business

3   Corporations Law, you may not commence an action, and use

4   the courts in the State of New York, either Federal or

5   State --

6           THE COURT:   But, as far as I understand it they

7   are now authorized to do business in New York, even if they

8   were not at the time the action was commenced.

9           But in any event, that's really got nothing to do

10  with the question of service, does it?

11          MS. FELTON:   Well, it has something to do with the

12  fact that we have an action pending in State Court, which

13  apparently they're attempting to circumvent, because they

14  were not licensed to do business.

15          THE COURT:   Well, that may -- I don't know if

16  that's true or not true, and I do find it curious that they

17  are -- that the secured creditor, who has invoked an

18  automatic stay of it's own foreclosure action, that's

19  somewhat unusual.  But I don't think that that is any way,

20  frankly, relevant to this issue.

21          If there's a proper and voluntary petition it will

22  go forward.

23          MS. FELTON:   All right, may I just indicate this

24  for the record: the fact that there is -- they made their

25  motion.  They made one motion for summary judgment, which

1  was denied.  They then brought a second motion for summary

2  judgment.  We cross moved for dismissal.  The current state

3  of the law in New York, which is applicable both to Federal

4  and State Courts is that if the plaintiff, or in this case

5  the petitioner does a systematic business, and I have

6  indicated in my papers showing you their Web site, where

7  they had forty advertisements of foreclosures or funded

8  mortgages that they had engaged in over a period of time,

9  without ever having been authorized.

10       THE COURT:  But they're authorized now, are they

11  not?

12       MS. FELTON:  They're authorized -- they are not

13  authorized.  The petitioner who appeared in this Court is

14  not authorized.  The entity authorized according to the

15  Secretary of State, is 1st Bridge Funding, LLC.

16       THE COURT:  Are they different entities?

17       MS. FELTON:  Well, they're supposed to, according

18  to the State Law to pursue an action under the name that

19  they were authorized to do business under.  That name is

20  not 1st Bridge, LLC.

21       THE COURT:  It seems to me that what this will,

22  this will come down to a question that would be determined,

23  if I determined that there were [inaudible] that there was

24  proper service, then we would get to this on the merits.

25  But I'm not dismissing this petition.

1          MS. FELTON:    All right, so --

2          THE COURT:    Not today.

3          MS. FELTON:    Now you indicated that you were going

4     to give us a schedule?

5          THE COURT:    Right.  I will give you a schedule.

6     What I'm going to do is, I'm going to set this down for a

7     hearing on the issue of service.

8          So your contention is that they were not -- that

9     1st Bridge which filed a petition was not, or First --

10         MS. FELTON:    It's 1st Bridge, LLC.

11         THE COURT:    But it's First, LLC that is not

12    licensed?

13         MS. FELTON:    Well, when they made their

14    application for authorization to do business on September

15    23, when the application was finally approved, it was not

16    approved in the name of 1st Bridge, LLC, but rather 1st

17    Bridge Funding, LLC.

18         THE COURT:    Okay, 1st Bridge Funding, LLC.  So, I

19    guess that the question would  be whether that is --

20    whether you just need to amend the caption to state the

21    name of the entity that's authorized.  But I'm doubting

22    that that's going to be a reason why this petition would be

23    dismissed.

24         MS. FELTON:    Well, you know --

25         THE COURT:    It might be some kind of defense in

1    the foreclosure action, but I don't know that it's a reason

2    why the petition would be dismissed?

3            MS. FELTON:    Well, Judge, I don't know that the

4    petitioner can pursue what appears to be identical relief

5    in two separate courts.

6            THE COURT:    Ma'am, this is a bankruptcy Court.

7            MS. FELTON:    I do understand that.

8            THE COURT:    This is an involuntary petition.  The

9    grounds for imposing an involuntary do not include the fact

10   that there's a foreclosure action pending in State Court, I

11   don't believe.

12           MS. FELTON:    I'm not saying that the grounds do.

13   But I am asserting to the Court that this is merely a way

14   to circumvent the State Court from issuing a decision,

15   which we expected to receive on February 13 of this year.

16           THE COURT:    Well, this is something, as I say,

17   here is what I'm going to do, as I was starting to say.

18           I am going to set this down for a hearing on the

19   issue of jurisdiction, whether there in fact has been

20   service.  Okay?  So I'll hear testimony from all relevant

21   witnesses on that issue.

22           At the same time -- in the meantime, you can go and

23   get a supplemental summons issued, if you want to do that,

24   and serve it.  And have it served in whatever manner you

25   think is the likeliest to be able to prove.

1    And if I conclude that they were served, that your

2    clients were served, then there is an order for relief in

3    place.  And we will proceed with -- then the involuntary

4    will proceed.  There will be -- so that your motion will be

5    denied.

6         MS. FELTON:  And I will be given a chance to

7    answer.

8         THE COURT:  No, not.  I don't know why.  No,

9    there's an order for relief.  There will be an order for

10    relief in place.  Your motion -- this is a motion to vacate

11    the order for relief, based on the fact that you weren't

12    served, okay.

13         MS. FELTON:  This is a motion not to vacate the

14    order of relief, to vacate the petition itself.

15         THE COURT:  That I'm not going to grant, because

16    the fact that you may not have been served, is not grounds

17    to vacate -- is not grounds to dismiss the petition.  It

18    would be grounds, potentially, to vacate the order for

19    relief.  But I'm not going to do that in the absence of

20    some proof.

21         MS. FELTON:  Well, how do I prove a negative?  If

22    I say that they weren't served, and their affidavit of

23    service --

24         THE COURT:  Well, you're going to have to figure

25    that out.  I'm going to hear -- I guess I'll hear

witnesses.  I'll hear your witness who is going to tell me

that he didn't, you know, that he checked the mail box and

the petition wasn't there.  And then he'll be cross

examined.  And I'll make my determination about his

credibility.

MS. FELTON:  Well, the credibility of the fact

that they served an affidavit of service with this Court,

where they said they served the Secretary of State and they

didn't.

THE COURT:  Issues of credibility, I guess are

issues that are up to me to determine, are they not?  And

so I certainly am not going to determine them on a mere

paper record.  I would require testimony.  And whatever

evidence that they want to present about the -- on the

Secretary of State issue, they can present as well.

MS. FELTON:  All right.  With respect to an

answer, I don't understand why I'm being foreclosed from --

THE COURT:  Well, we haven't -- we're still -- if

you -- if an order for relief has been entered then that

means that the bankruptcy is proceeding.  Right?  If I --

so there is no answer at this point that's required.  An

order for relief has been entered.

If I conclude that you were not served, your client

was not served, then the order for relief will have to be

vacated.  But, like I said, in the meantime, you can get a

1    supplemental summons issued, if you want to do that, and

2    serve it on the defendant.  And then if I conclude that

3    they were not served, then we can move directly into the

4    trial on the merits, on this involuntary petition.

5         MR. BROFMAN:   Your Honor, if I may be heard on

6    this.  First, Your Honor, I --

7         THE COURT:   So that we can all do it in one

8    proceeding.

9         MR. BROFMAN:   Your Honor, I understand.  I just

10   want to be clear on something though, because what I don't

11   want to do, if your honor says to serve a supplemental

12   summons is to provide an additional time for the debtor to

13   now file an answer.  Unless, you know, if Your Honor

14   determines that service was appropriate, because, frankly,

15   prima facie evidence of that is the actual depositing of

16   the envelopes into the post office box is all I need.

17        THE COURT:   Understood.  But I'm going to -- I

18   believe there is a factual issue that has to be determined

19   here.

20        MR. BROFMAN:   Your Honor, the only factual issue

21   would be the testimony of the person who deposited the

22   envelopes into the mailbox.

23        THE COURT:   But, are you saying that you think

24   that they haven't presented evidence sufficient to rebut

25   the presumption?

1      MR. BROFMAN:   That's correct, Your Honor, and

2   there's a couple of reasons.

3      THE COURT:   Okay, well you can argue that to me in

4   the context of an evidentiary hearing --

5      MR. BROFMAN:   I will.

6      THE COURT:   -- because I am not -- I think that

7   we're close enough to the line on that.

8      MR. BROFMAN:   Your Honor, I'm just telling you

9   what the case law -- our research on the case law that we

10   put in our opposition, specifically provides that simply

11   the deposit of the envelope into -- properly addressed --

12   put into the postal box, is enough, is enough --

13      THE COURT:   To invoke --

14      MR. BROFMAN:   -- to invoke service.

15      THE COURT:   -- invoke the presumption that it was

16   mailed.

17      MR. BROFMAN:   Well -- but if there is no -- if the

18   envelopes have not been returned to the sender, which would

19   be us, then under those circumstances there is an

20   irrebuttable presumption, because in fact case law said,

21   case law said, that just the mere fact that a debtor or a

22   party says they didn't receive the notice is not enough to

23   rebut the presumption.

24      THE COURT:   But there are -- is there also not

25   case -- I think this is highly fact specific, frankly.  And

1    I think there are cases that say that testimony that --

2    it's not an irrebuttable presumption that you --

3         MR. BROFMAN:    No, Your Honor, it has to be

4    addressed to the right location, the right person.

5         THE COURT:    Right.

6         MR. BROFMAN:    And in this case it was addressed to

7    two locations, both of which were the debtors.    And --

8         THE COURT:    I don't know that it's an irrebuttable

9    presumption even if it was proper -- even if the

10   presumption is invoked, I don't believe that it's

11   irrebuttable.    And I think that there are at least some

12   case law that talks about providing evidence of the

13   practice with mail handling on the part of the recipient.

14   And that that may be sufficient to rebut the presumption.

15   Mail handling coupled with non-receipt.    But we're going to

16   have -- I think we need to -- that factual record needs to

17   be developed.

18        MR. BROFMAN:    Your Honor, I'm okay with that.

19   What my concern is, with Your Honor's suggestion that I

20   file the supplemental summons, which I can --

21        THE COURT:    Well, you can do -- if you don't want

22   to do that don't.    Then if I conclude -- here's what I'm

23   thinking.    If I conclude -- if you want to avoid having a

24   period of time where there is no order for relief, then

25   this is what you ought to do.

1          MR. BROFMAN:    No, Your Honor, I don't disagree

2     with you.   Here's my --

3          THE COURT:    Here's -- if I determine that there

4     was improper service --

5          MR. BROFMAN:    Uh-huh.

6          THE COURT:    -- or that factually that there's no

7     jurisdiction, then I'm going to vacate the order for

8     relief.   I have no choice.   At that point she can get a

9     supplemental summons, and then you have that whole time

10    period is invoked.   I don't know whether the trustee has to

11    give up possession in the meantime.   I don't know whether

12    you want to go that route.

13         MR. BROFMAN:    Your Honor --

14         THE COURT:    But that's up to you.

15         MR. BROFMAN:    No, my concern, Your Honor, is as

16    follows.   If I get a supplemental summons issued by the

17    Court in the next few days, we serve the papers again, the

18    same way we served them the last time.   Do the same thing.

19    I don't want to start anew the debtor's right to now put in

20    an answer.

21         THE COURT:    Okay, well, only their answer,

22    whatever answer they would put in would only be considered

23    if I determine that they haven't been properly served in

24    the first place.

25         MR. BROFMAN:    That's -- Your Honor, that's my

**AAA Write It Right Transcription**

**Tel: (516) 764 3906**                              **Fax: (516) 203 4244**

1    concern.

2              THE COURT:    Right.

3              MR. BROFMAN:    And it's not the concern -- my

4    concern is to make sure that I don't give them a second

5    bite of the apple, when, I hope, the Court determines that

6    the first service was appropriate.

7              THE COURT:    But why has a secured creditor filed

8    an involuntary petition in order to invoke the automatic

9    stay to prevent -- to interrupt the consideration of its

10   own foreclosure action?

11             MR. BROFMAN:    Because the sale, because this

12   property is deteriorating rapidly.    And the property's --

13             THE COURT:    So why don't you just get a receiver

14   and --

15             MR. BROFMAN:    Your Honor, because Ms. Felton has

16   been very adept at working the State Court process.    And

17   doing the kind of red herrings, throwing them out to the

18   Court the same way she's done here today, by saying things

19   such as they weren't authorized to visit the case law.    The

20   law is very specific, that the contracts entered into by a

21   party, even if they didn't have authorization are still

22   enforceable.

23             And the only thing that's not enforceable is that

24   they can't bring an action in the State Court until they

25   actually cure that.    And in fact they did cure that.    And

1    in fact, Your Honor --

2              THE COURT:   How do you explain the discrepancy in

3    names?

4              MR. BROFMAN:   Well, I was just going to get to

5    that, Your Honor.

6              THE COURT:   Okay.

7              MR. BROFMAN:   Initially they had the name 1st

8    Bridge Funding, LLC.  That was changed.  That was changed.

9    1st Bridge Funding, LLC changed its name.  And there's a

10   record which is attached as Exhibit 10 to our opposition,

11   Your Honor, which says that 1st Bridge Funding, LLC,

12   changed its name to 1st Bridge LLC, that was filed with the

13   separate Secretary of State on -- it was filed with the

14   Secretary of State and is now -- that is the name in which

15   is authorized.

16             THE COURT:   So when was that filed?

17             MR. BROFMAN:   Well, the date -- well, it shows

18   that the database is current through February 11, 2013.

19   And this was -- the initial DOS filing date was September

20   23, 2011.  It's a change of name, Your Honor.

21             THE COURT:   Change of name took place somewhere

22   between September 23 and the present day?

23             MR. BROFMAN:   No, it was actually done -- yeah, it

24   was on September 23, 2011.

25             THE COURT:   But when was -- so when was -- when

1    was 1st Bridge Funding filed?

2              MR. BROFMAN:   The original authorization, Your

3    Honor?

4              THE COURT:   Yes.

5              MR. BROFMAN:   I believe actually the debtor

6    supplied that.  But the database from the Secretary of

7    State of the State of New York, shows that it's an

8    authorized foreign entity.

9              THE COURT:   But I'm asking you -- I'm trying to

10   understand the timing here, if you would.

11             MR. BROFMAN:   When it was filed, Your Honor?

12             THE COURT:   When was 1st Bridge Funding

13   authorized?

14             MR. BROFMAN:   It was -- it filed its initial -- I

15   believe, and I'm trying -- I don't have that directly in

16   front of me, Your Honor, although I'll try to find out.

17   1st Bridge Funding did a filing -- filed a certificate --

18   well, it began to file a certificate -- it began to do its

19   publication on October 3, 2011, Your Honor.

20             THE COURT:   October 3?  But they were -- 1st

21   Bridge Funding did?

22             MR. BROFMAN:   No, 1st Bridge LLC --

23             THE COURT:   Right.

24             MR. BROFMAN:   -- began to publish, to make that

25   change, it was filed as 1st Bridge.

1          THE COURT:   I was asking.   The argument was that

2     1st Bridge, whoever the plaintiff was in the State  Court

3     action was not authorized to do business in the State of

4     New York.  And you say that was rectified?

5          MR. BROFMAN:   No, Your Honor, it says in the

6     notice, in the notice when it was filed.  1st Bridge LLC,

7     application for authority was filed with the Secretary of

8     State of the State of New York on September 23, 2011 under

9     the fictitious name 1st Bridge Funding, LLC.  The LLC was

10    originally filed with the Secretary of State of the State

11    of New York -- State of New Jersey on November 9, 2005.

12    And that was what was published.  In fact that's -- this is

13    part of the debtor's motion papers, Your Honor.  I wouldn't

14    have even known that had I not seen that.  And then it was

15    authorized as 1st Bridge, LLC by the Secretary of State

16    through which is presently now an authorized party.

17         THE COURT:   Right.

18         MR. BROFMAN:   So this red herring that's being

19    thrown out is meaningless.

20         THE COURT:   Okay.  All right, but here's -- I

21    think that unless you want to proceed with -- unless you

22    want to have an evidentiary hearing on service, and -- if

23    you want to explain the Secretary of State thing to me?

24    Why it is that --

25         MR. BROFMAN:   Yes, Your Honor.

1          THE COURT:    -- the Secretary of State has a record

2     of service?

3          MR. BROFMAN:    I will explain it, Your Honor.

4          THE COURT:    And that your process server has no

5     receipt?

6          MR. BROFMAN:    My process server has and we'll

7     bring them in, if you want, Your Honor.    But the process

8     server actually delivered the papers to the Secretary of

9     State.

10          THE COURT:    So why doesn't he have a receipt?

11          MR. BROFMAN:    Your Honor, we don't know why the

12     Secretary of State has no records of it.

13          THE COURT:    Well, why doesn't your process server

14     have a record?

15          MR. BROFMAN:    We don't know, Your Honor.    I mean

16     we reported it to the Court, Your Honor.    In our papers we

17     investigated it when as soon as we got the motion.

18          THE COURT:    Okay.

19          MR. BROFMAN:    We investigated that issue.    Asked

20     the process server to produce the receipt.    Produce all the

21     information.    They said we don't have it.    And the

22     Secretary of State lost the file.

23          THE COURT:    Okay, well --

24          MR. BROFMAN:    Now, so what we did, what we did,

25     Your Honor --

1          THE COURT:  But don't -- that raises issues of

2     actual notice, doesn't it?

3          MR. BROFMAN:   No, Your Honor.  It doesn't, because

4     the law says that all we have to do is deposit it properly

5     addressed to an officer of the debtor.  If properly

6     addressed deposit it first class mail in a depository.

7          THE COURT:  You don't think if it was never

8     received, that that doesn't raise some due process issues?

9          MR. BROFMAN:   No, Your Honor.

10          THE COURT:   No, Your Honor, because it was never

11     returned.  Since it was never returned there's a

12     presumption of receipt.  You know, in that case, every time

13     we would do first class mailing, the other party would come

14     and say, never got it.  That's all they have to do Your

15     Honor and there would be no issues.

16          THE COURT:   You're not -- It think we're talking

17     across purposes here, because I'm not saying, I'm saying

18     that, okay.  There are two separate questions.

19          MR. BROFMAN:  Uh-huh.

20          THE COURT:  It seems to me.  If what you're saying

21     to me is that the statute only requires mailing in order to

22     effectuate service.  It doesn't require that it be

23     received.  In other words the person served when it's

24     mailed, even if they never get it.  Isn't that a problem

25     under -- but I don't think that's what you're saying.  I

1   think you're saying that the person is presumed to have

2   received it when -- if it can be shown that it is mailed.

3   But that is not an irrebuttable presumption.

4           MR. BROFMAN:  Your Honor, what the case law says,

5   and I'm going to cite the Court to one of the cases that's

6   cited in our opposition.  It is Menthal [ph.] versus

7   Control Resolution Co., 758F 2nd 811, which is a Second

8   Circuit decision from 1985.  When a party, if a party were

9   -- and this is what the courts say.  If a party were

10  permitted to defeat the presumption of received notice,

11  resulting from certificate of mailing, by a simple

12  affidavit to the contrary, the scheme of deadline and bar

13  dates under the bankruptcy become unraveled.

14          THE COURT:   I understand that, but it is not an

15  irrebuttable presumption.

16          MR. BROFMAN:   Not completely rebuttable, Your

17  Honor.  I mean, I would assume that there are some

18  instances where the place burned down, and there is no

19  longer a repository.

20          THE COURT:   Or if you got somebody on the stand.

21  I mean, let's ask this.  If somebody got on the stand and

22  said I checked the mailbox every single day, from X date to

23  X date and it wasn't there.  And I'm the only one who

24  checks the mail.  It's a locked mailbox.  Nobody else can

25  get in.  Everyday I went in.  I opened it.  I looked

1  inside.  There was nothing there.  It was not there.  You

2  don't think that would be sufficient to rebut the

3  presumption?

4           MR. BROFMAN:   Your Honor, I'm not sure.  And I

5  haven't read the case law on that issue.

6           THE COURT:  But then we would have questions.  As I

7  say, I believe that it is highly fact specific on these

8  issues.

9           MR. BROFMAN:  I don't disagree, Your Honor.  I

10  understand.  I understand for what it's worth.

11           THE COURT:  So then I would have to determine

12  whether, I guess among other things, whether you would have

13  the opportunity to cross examine this individual.  And I

14  would have to determine whether I found his testimony

15  credible.

16           MR. BROFMAN:   But, Your Honor, the most important

17  part of that here, in this particular motion, is there is

18  nothing -- no affidavit of the principal.  The only

19  affidavit that we received, the only declaration we

20  received is from a caretaker.

21           Henrietta Miller, who is the principal of this

22  debtor, has not put in any papers that say, by the way

23  Judge, I never got the motion.  I never got served with the

24  involuntary petitioner and the summons.  There's nothing

25  there.  There's a caretaker who says I regulate or run the

1    property.  And I didn't see it.  Now --

2         THE COURT:   Well, that's a question of

3    credibility, is it not?

4         MR. BROFMAN:   Well, Your Honor, Your Honor, it's a

5    very interesting issue because when the principal of the

6    party doesn't put in a declaration or affidavit it raises

7    some very interesting presumptions there.

8         And when you have a presumption, you have a

9    presumption that you want the Court to say, well we have a

10   presumption of mailing and receipt.  And now we have a

11   principal of a debtor, who doesn't even say, well, I didn't

12   get it.  It was addressed to her, by the way, not addressed

13   to the caretaker.  Not addressed to just an officer.  It

14   was addressed, as it put in the affidavit, addressed

15   attention Henrietta Miller.

16        THE COURT:   I understand.  But then again, we're

17   talking in the realm of a factual issue.  I suppose you

18   could raise to me the possibility that even if Mr. what's

19   his name didn't get it, Ms. Felton did get it.  And that's

20   why it wasn't in the box when he went to look, because she

21   had already taken out.  I don't know.  But these are all

22   issues that are factual in nature.  And I don't believe

23   that they're susceptible of determination on affidavits.

24        MR. BROFMAN:   Your Honor, my point to the Court is

25   that the papers that are before the Court are not

1    sufficient to raise the issue.

2            THE COURT:    I think they are.  I'm not going to --

3            MR. BROFMAN:  Your Honor, that's Your Honor's

4    determination.

5            THE COURT:    I'm not deciding them on -- I'm not

6    deciding these issues on these papers.

7            MR. BROFMAN:  I understand.  I understand, Your

8    Honor. And again, now that I understand Your Honor's

9    position as to the supplemental summons, I probably would.

10            THE COURT:  So here's my -- if you want to proceed

11    in that way you can go ahead.  And what I will do is I will

12    set up a time for you to answer the complaint.  And then we

13    can have two trials.  We'll have a trial first on the

14    question of whether there was service.  If I conclude there

15    was service, that ends it and the case moves forward.

16            MR. BROFMAN:  Uh-huh.

17            THE COURT:    If I conclude that service was not

18    proper then I will go on to consider the merits of the

19    involuntary petitioner.

20            MR. BROFMAN:    That would be fine, Your Honor.

21            THE COURT:  So, let's set a schedule.  So when are

22    you going to get the supplemental summons?  I know the

23    trustee has some issues.  And I will discuss that as soon

24    as we're done setting a schedule.

25            MR. BROFMAN:    Your Honor, I will have it by next

1    week; if I have seven days?  It's just that I'm busy with

2    other matters Your Honor, and I need to get one of my

3    associates to deal with it.

4              THE COURT:   Okay.  So you're going to issue a

5    supplemental summons and you'll serve a supplemental

6    summons by the 28 of February?

7              MR. BROFMAN:  Yes, Your Honor.

8              THE COURT:   You might think about serving that in

9    a matter that is more easily susceptible of proving?

10              MR. BROFMAN:   If Counsel will accept service, I'll

11    serve it on Counsel.

12              THE COURT:   I doubt she will.

13              MS. FELTON:   No.

14              MR. BROFMAN:   So, then Your Honor, the only thing

15    I can do is serve it in accordance with the bankruptcy

16    code.

17              THE COURT:   Do what you want.

18              MR. BROFMAN:   Which I'm going to do.

19              THE COURT:   Do what you want.  Okay, the 28 of

20    February.  And so I'm going to direct that an answer --

21    okay, let's pick a date.  I guess we'll give them a trial

22    date on the last week of March.  How about that?

23              MR. BROFMAN:   Your Honor, if I may just check the

24    schedule because the Jewish Holidays are during that period

25    of time.  And I have some difficulty.

1          THE COURT:   Yes, they are.   They are.

2          MR. BROFMAN:   And I know I have a trial in front

3    of Judge Eisenberg shortly thereafter.

4          THE COURT:  The 28?

5          MR. BROFMAN:  Let me just check, Your Honor.

6          MS. FELTON:   I have trial that I'm commencing on

7    the 28, Judge.

8          THE COURT:   How about the 27?

9          MR. BROFMAN:   That's Passover, I'm not going to be

10   available.

11         MR. WOFSE:   That's Passover.

12         THE COURT:   How about the 26?

13         MR. BROFMAN:   The 26 is also Passover, Your Honor.

14         THE COURT:   Passover starts on the night of the

15   25?

16         MR. BROFMAN:   The night of the 25 and it's the 26

17   and the 27 are the two religious days.

18         MR. WOFSE:   Correct.

19         MR. BROFMAN:   And then the week later, the 7 and 8

20   they also are.  And I have a trial starting in front of

21   Judge Eisenberg on the 1.

22         THE COURT:   What's that?  Okay.  The 3 of April?

23         MR. BROFMAN:   Let me just check Your Honor.

24         THE COURT:   The problem is going to be, of course,

25   you know, unclear what's going to be happening in terms of

1   managing the property between now and then.

2           MR. BROFMAN:  Your Honor, I'm --

3           THE COURT:   You're going to have to realize that.

4   The trustee is in a bit of a bind.

5           MR. BROFMAN:   Well, Your Honor, the trustee has

6   brought a motion.  And I assume that right now is an order

7   for relief entered that should be enforced.

8           Your Honor, April 3 is fine.

9           MS. FELTON:   April 3 is fine for me.

10          THE COURT:   Okay.  April 3 we'll give you then.

11  We'll start at 10 o'clock.

12          MR. BROFMAN:   Yes, Your Honor.

13          THE COURT:   Okay, so I'm going to direct that an

14  answer to the order for relief be filed on the 15 of March.

15  And answer to the petitioner be filed on the 15 of March.

16          And I'm going to direct that a joint pre-trial

17  order be filed on the 29 of March outlining all of the

18  issues that will be tried both on the issues of service of

19  the original summons.  And also on the substantive

20  questions that will be addressed only in the event that I

21  determine that service did not properly take place.

22          MR. BROFMAN:   And what date is that Your Honor,

23  the 29 you said?

24          THE COURT:   The 29.  So I'm going to need --

25  you're going to need to list your witnesses.

1        MR. BROFMAN:    Uh-huh.

2        THE COURT:    Provide all of your -- provide summary

3    of testimony.  Provide all of the documents that you're

4    going to introduce as evidence.  And those -- you know,

5    witnesses who are not identified and documents that are not

6    identified as Exhibits will not be permitted to be

7    introduced at the trial.

8        MS. FELTON:    Okay.

9        THE COURT:    Okay.

10        MS. FELTON:    Judge, the answer, instead of the 15,

11    may I have March 19?

12        THE COURT:    The 22?  That's giving you more than

13    the statutory period of time, you recognize?  You get

14    twenty-one days under the statute.

15        MS. FELTON:    Okay.

16        MR. BROFMAN:    Your Honor, the reason -- and I

17    would like to be able to take discovery since it's a 9014

18    issue.

19        THE COURT:    Okay.  I'm going to hold you to the

20    15, because that gives you the full -- that gives you a

21    little bit more than the full statutory period.

22        MS. FELTON:    Sure.

23        THE COURT:    And I don't feel that that's unfair,

24    given the fact that you had actual notice of this

25    proceeding for quite some --you know, for some substantial

1  period of time.  So this is -- I don't think it's unfair to

2  require you to answer within this period.

3          So the 15.  And like I said, the joint pre-trial

4  order by the 29.  And then we'll have the trial on the 3.

5  Are there any questions about this?

6          MR. BROFMAN:   No, Your Honor.

7          MS. FELTON:   No, Your Honor.

8          THE COURT:   Okay.  Then let's talk about the

9  issues that the trustee has.

10          MR. WOFSE:   Thank you Your Honor.  Adam Wofse for

11  Greg Messer, Chapter 7 Trustee.

12          As the parties and the Court are aware from our

13  papers and from communications with various interested

14  parties, our concerns are the trustee is sort of in limbo

15  here.  We do have an order for relief.  There was no

16  insurance on the properties.  These are two rental income

17  producing properties.  They are in a state of disrepair.

18  There are documents given to us from the bank.  Mr. Messer

19  did physically inspect these two properties.  And we have

20  insurance bills that are due next week.  And then on the 3

21  of each month going forward.

22          If we did not put insurance in place, obviously the

23  estate and the trustee would be at terrible risk.  We put

24  in all appropriate coverages as Mr. Messer does in all of

25  his cases, as soon as he was appointed as trustee.  And I

1    would recommend to the Court, while we're maintaining the

2    status quo and moving forward with the scheduling for the

3    evidentiary hearing that the debtor be directed to pay

4    those bills.  I could furnish the bills to Ms. Felton.  As

5    long as we see evidence that they're paid, then there's no

6    risk to the estate or the properties.

7              THE COURT:    These are the insurance bills?

8              MR. WOFSE:    Correct.  Only insurance at this

9    point.

10             THE COURT:    Okay.  All right, any objection to

11   that?

12             MS. FELTON:    You know, there is insurance.  And

13   there was insurance on the building.

14             THE COURT:    Well, would you like to provide

15   evidence of that?  In that case that might short circuit

16   this whole dispute?

17             MS. FELTON:    All right.  The fact is that at the

18   last hearing the Court asked me to turn the insurance

19   information over for photocopies to plaintiff.  And they

20   kept it.  And that's the reason why I couldn't find it.

21   And I wasn't able to provide it.

22             THE COURT:    Well, presumably --

23             MS. FELTON:    I can tell you --

24             THE COURT:    -- you can call the insurance company

25   and get a certificate of insurance issued.

1          MS. FELTON:    Yes.

2          THE COURT:    All right, so why don't you provide

3     that to Mr. Wofse.

4          MS. FELTON:    Yes.

5          THE COURT:    If that's sufficient then that will

6     end -- then you can cancel the insurance and get a refund,

7     right?

8          MR. WOFSE:    Whose determination as to what's

9     sufficient?

10         THE COURT:    It has to be sufficient from the

11    trustee's point of view.

12         MR. WOFSE:    Exactly, Your Honor.  We put --

13         THE COURT:    The trustee has to determine if it's

14    sufficient.

15         MR. WOFSE:    It was very difficult to place these

16    policies based on these specific properties, where they

17    were; the disrepair of the properties.  And the fact that

18    they are not fully occupied.  There are some occupancies,

19    but it's not full occupancy.

20         THE COURT:    Okay.

21         MR. WOFSE:    So the trustee worked very hard with

22    there different insurance agencies to make sure appropriate

23    insurance is in place.  And even if Ms. Felton is able to

24    provide proof, we can't --

25         THE COURT:    Well, what would be inappropriate?

1   How are you going to evaluate?  What criteria do you use in

2   evaluating these policies?

3          MR. WOFSE:   Right, the trustee's business

4   judgment, in consultation with the insurance agent.

5          THE COURT:   But I'm asking you what are you

6   looking for in an insurance policy?

7          MR. WOFSE:   Sufficient coverage for liability,

8   like trips and falls --

9          THE COURT:   Okay.

10          MR. WOFSE:   -- or a beam should fall through the

11  ceiling.

12          THE COURT:   So it's the coverage amount, the

13  coverage amount?

14          MR. WOFSE:   Exactly.

15          THE COURT:   So what are the parameters that you

16  use?

17          MR. WOFSE:   Well, we will -- I will be glad to

18  share that with Ms. Felton and the Court.  It's basically a

19  conversation that we had with the insurance agent.  And in

20  fact in this case it turned out that some of the personal

21  liability coverage would only have covered the trustee and

22  his own professionals visiting the property.  That wasn't

23  good enough.  We went to another agency.  We needed to make

24  sure that the occupant, resident, visitors, to that

25  property are covered in case there's a slip and fall, or

1    somebody trips down the stairs.

2          We can talk about what may be able to be modified.

3    But the point I was also trying to make was if she had

4    sufficient insurance, we've already incurred certain

5    minimums.  We can cancel and get pro-rated refunds.  But

6    there are some minimums that the trustee will [inaudible].

7          THE COURT:   And I recognize that.  I recognize

8    that.  But you certainly -- if you determine that there was

9    insurance on the property that was within the realm of what

10   would be considered sufficient, you would still mitigate.

11   You wouldn't carry duplicate insurance on the property.

12         MR. WOFSE:   Yes.  Correct.  If it was sufficient,

13   or insufficient we would look for the excess liability.

14         THE COURT:   Right.

15         MR. WOFSE:   Which we also have here.

16         THE COURT:   And you might be able to save some

17   costs that way.

18         MR. WOFSE:   We would always look to mitigate that,

19   Your Honor.

20         THE COURT:   Okay.

21         MR. WOFSE:   My concern is these payments are due

22   starting next week.  And there are no funds in the estate.

23   These are rental income-producing properties.

24         THE COURT:   Okay.

25         MR. WOFSE:   They should pay the first payment or

1  worry about a reconciliation occurring and refunds later.

2       THE COURT:   Well, I guess that maybe the

3  resolution is -- the appropriate resolution is for me to

4  direct that this insurance bill be paid, unless the debtor

5  produces evidence of insurance that is in the trustee's

6  business judgment satisfactory.

7       I don't think the trustee is looking to be at war

8  with you, with the debtor here.  The trustee is only

9  seeking to make sure that there is insurance in place that

10 is sufficient to cover both property damage and liability,

11 during this period of time that he's responsible for the

12 property.

13      The trustee didn't ask for this.  The trustee got

14 appointed because there was an order for relief entered.

15 So I think that if you can produce this information to

16 them, they -- and if it's not enough, then at least they

17 can reduce whatever they've got to an excess policy, and

18 make some savings there.

19      But other than -- in the absence of that, this bill

20 is going to need to be paid.  And I think and the trustee -

21 - the trustee is taking a fairly -- because the trustee

22 could be, if he wanted to be more aggressive in this case

23 could press his demand for the rents to be turned over.

24      But he's not doing that right now.  He's taking the

25 view that just as long as I am confident that, you know,

1    that insurance is in place, and there isn't going to be any

2    uncovered liability here, or property lost that's going to

3    result -- under my watch, then I'm comfortable with that.

4          MR. WOFSE:  Your Honor, if I could add to that, as

5    long as we could please get an accounting of the rents.  We

6    do not have a full rent roll.

7          THE COURT:  Yes.

8          MR. WOFSE:  We do not know the exact amount paid

9    per month.

10         THE COURT:  What you want is a rent roll?

11         MR. WOFSE:  I'd really like a full accounting.

12         THE COURT:  Okay.

13         MR. WOFSE:  Each month rent received, rent paid.

14   Copies of leases.

15         THE COURT:  Since the filing of the petition?

16         MR. WOFSE:  Exactly.  We have an order for relief,

17   right now, Your Honor.  The trustee needs to do what he

18   needs to do.

19         THE COURT:  Okay.  Can you provide that

20   information to the trustee?

21         MS. FELTON:   I don't personally have it.

22         THE COURT:  Okay, well, I'm going to direct that

23   it be provided.  So Mr. Wofse, you can settle an order on

24   that.

25         MR. WOFSE:  And for the moment Your Honor, would

1  we carry the designation motion?

2       THE COURT:   Yes, uh-huh.  Do you feel like you

3  want to -- I mean, if that's okay with you.

4       MR. WOFSE:   I have a -- I'd rather have her

5  designated -- the 341 meeting is Tuesday.

6       THE COURT:   And nobody appeared?

7       MR. WOFSE:   Coming up.  Next Tuesday.

8       THE COURT:   Oh, next Tuesday.  And since the trial

9  is not going to occur until a good month from now, and the

10  trustee ordinarily would already have his property manager

11  in place as well, in case repairs need to be made.

12       THE COURT:   All right.  Is there any objection to

13  having Ms. Miller appear at the 341 meeting, and be

14  examined by the trustee about the property?

15       MS. FELTON:   I would object to that, because of

16  her age.  But I would -- I could produce someone who could

17  give him the information.

18       THE COURT:   Who would that be?

19       MS. FELTON:   That would be her nephew.

20       THE COURT:   And who is the actual manager of the

21  property?

22       MS. FELTON:   The nephew and the caretaker.

23       THE COURT:   Okay, what's the nephew's mane?

24       MS. FELTON:   Craig Smith [ph.]

25       THE COURT:   So is it your view that he is the more

1      appropriate person to be designated as a -- as an

2      individual required to act in this case rather than Ms.

3      Miller?

4              MS. FELTON:   Yes.

5              THE COURT:   Okay, is Ms. Miller -- how old is she?

6              MS. FELTON:   I had her as being 90.  I understand,

7      by something that they produced that she's 83.  She's still

8      a senior citizen and she is --

9              THE COURT:   Does she live -- she doesn't live at

10     the property, I take it?

11             MS. FELTON:   1401 Dean Street.

12             THE COURT:   Okay.

13             MR. WOFSE:   Your Honor, if I could suggest, may I

14     submit an order possibly naming all three and whatever

15     combination of knowledgeable persons, the nephew and the

16     caretaker, if they should show up at the creditor's

17     meeting, fine.  Whoever has knowledge about the creditor's

18     for the estate, fine.  But I don't want to have to come

19     back later seeing Ms. Miller being the sole debtor's

20     principal.

21             THE COURT:   Okay, are you saying that Ms. Miller

22     doesn't actually have knowledge of the --

23             MS. FELTON:   No, I'm saying that because of the

24     state of her health, that it is difficult to -- it would be

25     difficult to produce her.

Case 1-12-48522-cec   Doc 28   Filed 03/04/13   Entered 03/04/13 17:11:09

40

1       THE COURT:   And you're saying that her nephew is

2   more knowledgeable?

3       MS. FELTON:  Well, he's actually running the

4   property, yes.  At this point.

5       THE COURT:   Since what period of time?

6       MS. FELTON:   I would say the last six or eight

7   months.

8       THE COURT:   Okay.  What is his name?

9       MS. FELTON:   Craig --

10      THE COURT:   I'm sorry.

11      MS. FELTON:   Smith.

12      THE COURT:   So I'm going to designate him as the

13  person who is responsible, at this juncture.

14      MS. FELTON:   Would you be so kind as to tell me

15  when this 341 meeting is?

16      THE COURT:   Mr. Wofse, what was the date and time?

17      MR. WOFSE:   It's Tuesday, at 9:30.

18      MS. FELTON:   Tuesday is what date please?

19      MR. WOFSE:   At 9:30.

20      COURT OFFICER:  The 26.  The 26.

21      MS. FELTON:  The 20?

22      MR. BROFMAN:   The 26.

23      MS. FELTON:   Thank you.

24      MR. WOFSE:   Your Honor, can we have Mr. Smith's

25  address, because that will be one of the places we will

1    mail.

2            MS. FELTON:    1401 Dean.

3            MR. WOFSE:    He's also at 1401?

4            THE COURT:    1401 Dean Street?

5            MS. FELTON:    Yes, Brooklyn, New York 11216.

6            MR. WOFSE:    So Ms. Miller is at 1401 Dean Street

7    also?

8            MS. FELTON:    Yes.

9            MR. WOFSE:    Okay.

10            THE COURT:    What's that ZIP code please?

11            MS. FELTON:    11216.

12            THE COURT:    Okay.  11216.  Okay.  All right.  So

13    you can -- you can settle an order on all of these issues.

14    Okay?

15            MR. WOFSE:    Very well, Your Honor.

16            THE COURT:    Does anyone have any questions or

17    concerns at this point?  Okay.  All right, thank you.

18            MR. WOFSE:    Thank you Your Honor.

19                        **********

20                    [END OF HEARING]

21    [Audio CD counter ends 3:40:53]

1                                   INDEX

2

3                                  RULINGS

4                                          Page        Line

5                                           27`          3

6    Issue and serve supplemental summons by 2/28.

7

8                                           29          l2

9    Answer for an order of relief be filed on March 15.

10

11                                          29          15

12     Answer to the petitioner be filed on the 15 of March.

13   I'm going to direct that a joint pre-trial order be filed on

14   the 29 of March outlining all of the issues that will be

15   tried both on the issues of service of the original summons.

16   And also on the substantive questions that will be addressed

17   only in the event that I determine that service did not

18   properly take place.

19

20                                          37          21

21   Direct that rent rolls will be provided.

22

23

43

C E R T I F I C A T I O N

1   I, Phyllis P. Corella certify that the foregoing transcript

2   is a true and accurate record of the proceedings.

3

4

5

6

7   _____    /x/   Phyllis P. Corella _____

8   Phyllis P. Corella

9   March 4, 2013

10

11

12   **AAA Write It Right Transcription**

13   **500 Silver Lane**

14   **Oceanside, New York 11572-1941**

15   **Tel: (516) 764-3906 Fax: (516) 203-4244**

16   **FTP SITE: https://writeitright.sharefile.com/filedrop**

17

18

19

20

21

22